UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANAE M. o/b/o I. M.,<br>    *Plaintiff*,<br><br>    v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner,*<br>*Social Security Administration,*<br>    *Defendant.* | No. 3:20-cv-01506 (JAM) |

**ORDER GRANTING MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

The plaintiff is a ten-year-old boy who suffers from asthma, attention deficit hyperactivity disorder (ADHD), and oppositional defiant disorder (ODD). His mother, Janae M., filed an application on his behalf for child's supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. The Commissioner of Social Security denied the application after finding that the plaintiff was not disabled. The plaintiff now brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner's decision.[1] The Commissioner has filed a motion to affirm her judgment.[2] For the reasons below, I will grant the Commissioner's motion to affirm and deny the motion to reverse.

BACKGROUND

The following facts are taken from the transcripts provided by the Commissioner.[3]

The plaintiff applied for SSI in May 2018, with an alleged onset date of April 2018.[4] The Social Security district office in Waterbury initially determined that he was not disabled.[5] Based

---

[1] Doc. #18 (motion to reverse).
[2] Doc #22 (motion to affirm).
[3] *See* Docs. #16 (transcripts), #75-1 (text-searchable version). Page references to the transcript are to the pagination generated on the Court's CM/ECF docket. For ease of reference, a citation to the internal Social Security Administration transcript number is provided in the form (Tr. ##).
[4] Doc. #17-1 at 61-62 (Tr. 57-58).
[5] *Id*. at 70 (Tr. 66).

on evaluations by psychologist Robert Decarli and pediatric physician Barbara Coughlin, as well as the plaintiff's school and medical records, the district office found that the plaintiff's ADHD and ODD caused "some limitations in the ability to function" but that "those limitations [we]re not severe enough to be considered disabling" because they did not constitute "marked and severe functional limitations."[6]

Upon request for reconsideration, the district office again denied the plaintiff's claim in October 2018 after considering additional records and further evaluations by another state psychologist, Hedy Augenbraun, and pediatric physician, Virginia Rittner.[7] These doctors opined that the plaintiff was "likely to show significant improvement with compliance with treatment," and the agency concluded once again that his neurological issues were not disabling.[8]

The plaintiff requested a hearing before an ALJ to submit additional evidence of his disability.[9] Counsel was appointed to represent him at the hearing, which took place in June 2019.[10] The ALJ received into evidence the plaintiff's school and medical records, including updated progress notes from his community health center, hospital records, and two questionnaires completed by his special education teacher.[11] The only testimony at the hearing was that of the plaintiff's mother, Janae M. (Ms. M).[12]

Ms. M. testified that she and her husband are separated, and that she is raising the plaintiff along with his two older brothers, while her daughter lives with Ms. M.'s mother.[13] The

---

[6] *Ibid*.
[7] *Id*. at 81 (Tr. 77).
[8] *Id*. at 81-82 (Tr. 77-78).
[9] *Id*. at 102 (Tr. 98).
[10] *Id*. at 40, 112, 133 (Tr. 36, 108, 129).
[11] *Id*. at 42-43 (Tr. 38-39).
[12] *Id*. at 44 (Tr. 40).
[13] *Id*. at 44-46 (Tr. 40-42).

family moved from New York to Connecticut in mid-2018.[14]

When asked about the plaintiff's neurodevelopmental issues, Ms. M. stated that he "can't seem to keep still in school and at home" and therefore goes to school for only two and a half hours a day in a behavior developmental learning group.[15] Because the plaintiff comes home so early, Ms. M. allows him to play games on an electronic tablet and watch television for three to four hours a day.[16] He reads a little bit.[17] As for school subjects, the plaintiff is not failing any classes but he struggles with math, including subtraction and adding large numbers.[18]

Ms. M. reported that the plaintiff has sibling arguments with his brothers and on bad days also argues with peers and his teacher at school.[19] He was taken from school to the hospital three times for aggressive behavior, and began attending therapy and taking medication to reduce his aggression.[20] When asked what triggers the plaintiff's outbursts, his mother responded "just telling him what to do," and explained that "he doesn't like being told what to do" and gets "frustrated with the work, the schoolwork and homework."[21] He has a few friends at school, but Ms. M. does not allow him to have playdates at friends' houses or his own.[22] On one occasion, the downstairs neighbor said something to the plaintiff about Ms. M., and the plaintiff threw a rake at the neighbor's window.[23] On other occasions at school, the plaintiff threw a chair and pushed his teacher.[24] His teacher has written home over the plaintiff talking out, not raising his

---

[14] *Id.* at 51 (Tr. 47).
[15] *Id.* at 45-47 (Tr. 41-43).
[16] *Id.* at 48-49 (Tr. 44-45).
[17] *Id.* at 49 (Tr. 45).
[18] *Id.* at 53-54 (Tr. 49-50).
[19] *Id.* at 46 (Tr. 42).
[20] *Id.* at 47, 59 (Tr. 43, 55).
[21] *Id.* at 48 (Tr. 44).
[22] *Id.* at 53-54 (Tr. 49-50).
[23] *Id.* at 54 (Tr. 50).
[24] *Id.* at 55-56 (Tr. 51-52).

hand, and walking out of class.[25]

Ms. M. reported that the plaintiff treats her well and that she has a "special bond" with him as her youngest child.[26] Her primary complaint is that he does not consistently respect her authority.[27] The plaintiff also requires assistance showering and brushing his teeth because he misses certain spots and has to be redirected to do things.[28] Neither grandmother is able to babysit the plaintiff because he is hyperactive and does not listen, such that when Ms. M. cannot care for the plaintiff, she leaves him in the care of a longtime family friend who is stern but understanding.[29]

The Social Security Act provides a three-step process for evaluating whether a person under the age of 18 is "disabled." 20 C.F.R. § 416.924(a)-(d). First, the Commissioner determines whether the claimant engages in substantial gainful activity. *Id.* If he does, he is not disabled. *Id.* If he does not, the Commissioner next determines whether the claimant has a medically determinable impairment or combination of impairments that is "severe." *Id.* If the claimant does not have any severe impairments, then he is not disabled. *Id.* If he does, then the Commissioner determines whether the claimant's impairment meets, medically equals, or functionally equals the severity of an impairment listed in the Social Security regulations. *Id.*

For neurodevelopmental disorders such as ADHD, Listing 112.11 defines the degree of impairment required to constitute a disability. Under Listing 112.11, a claimant must show:

> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>    1. One or both of the following:
>       a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

---

[25] *Id.* at 58-59 (Tr. 54-55).
[26] *Id.* at 54-55 (Tr. 50-51).
[27] *Ibid.*
[28] *Id.* at 49-51 (Tr. 45-47).
[29] *Id.* at 56-57 (Tr. 52-53).

> b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
> 2. Significant difficulties learning and using academic skills; or
> 3. Recurrent motor movement or vocalization.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

*Id*. Pt. 404, Subpt. P, App. 1-B2 § 112.11 (internal citations omitted). With respect to the third and fourth areas of mental functioning in Part B, the pertinent regulation provides:

> 3. Concentrate, persist, or maintain pace (paragraph B3). This area of mental functioning refers to the abilities to focus attention on activities and stay on task age-appropriately. Examples include: Initiating and performing an activity that you understand and know how to do; engaging in an activity at home or in school at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while engaged in an activity or task; changing activities without being disruptive; engaging in an activity or task close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at school; and engaging in activities at home, school, or in the community without needing an unusual amount of rest. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.
> 4. Adapt or manage oneself (paragraph B4). This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

*Id*. § 112.00E.

In determining whether an impairment "functionally equals" a listed impairment, the

Commissioner evaluates the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *See id.* § 416.926a(b)(1). To functionally equal a listing, the child's impairment must produce a "marked" limitation in at least two domains or an "extreme" limitation in at least one domain. *See id.* § 416.926a(a).

A marked limitation exists when a child's impairment "interferes seriously" with his ability to initiate, sustain, or complete activities independently, resulting in a standardized test score that is two standard deviations below the mean and correspondingly impaired functioning in those subject areas. *See id.* § 416.926a(e)(2). An extreme limitation exists when it "interferes very seriously" with the child's ability to initiate, sustain, or complete activities independently, resulting in a standardized test score that is three standard deviations or more below the mean and correspondingly impaired functioning in those subject areas. *See id.* § 416.926a(e)(3).

In August 2019, the ALJ denied the plaintiff's claim.[30] At Step One, the ALJ concluded that the plaintiff does not engage in substantial gainful activity.[31] At Step Two, the ALJ found that the plaintiff's ADHD was a severe impairment causing more than minimal functional limitation.[32] At Step Three, the ALJ concluded that the plaintiff's neurodevelopmental issues did not meet or functionally equal the severity of Listing 112.11.[33]

The ALJ explained that the plaintiff's ADHD, while causing more than minimal functional limitations, did not cause an extreme limitation in any functional domains or a marked

---

[30] *Id*. at 16 (Tr. 12).
[31] *Id*. at 22 (Tr. 18).
[32] *Ibid*.
[33] *Ibid*.

6

limitation in two or more areas.[34] Because the plaintiff's only marked limitation was in the domain of interacting and relating with others, the ALJ concluded that his ADHD and ODD did not cause a combination of impairments functionally equal to the severity of the listings.[35]

The Social Security Appeals Council denied the plaintiff's appeal.[36]

## DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

The plaintiff contests the ALJ's finding that his ADHD was not functionally equivalent to an impairment. Based on his counsel's representations at oral argument, the plaintiff principally challenges the ALJ's consideration of his functioning in two domains: (1) acquiring and using information, and (2) attending and completing tasks.[37] I will therefore focus on whether substantial evidence in the record supports the ALJ's determination with respect to these

---

[34] *Id*. at 22 (Tr. 18).
[35] *Id*. at 33 (Tr. 29).
[36] *Id*. at 5 (Tr. 1).
[37] I need not address the remaining functional domains given that the plaintiff has expressed agreement with the ALJ's findings of a marked impairment in domain (3) interacting and relating with others, and less than marked limitation or no limitation in the domains of (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* Doc. #18-1 at 9 n.3.

7

domains. In light of the substantial overlap between those criteria and the functional equivalence domains, I do not separately analyze whether substantial evidence supports the ALJ's determination that the plaintiff's impairments did not meet the functional listing criteria.[38]

### *Acquiring and using information*

The acquiring and using information domain considers how well a child acquires or learns information, and how well a child uses the information he has learned. 20 C.F.R. § 416.926a(g). The regulation provides in pertinent part:

> School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

*Id*. § 416.926a(g)(2)(iv). The regulation gives several examples of limited function in this area:

> (i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
> (ii) You cannot rhyme words or the sounds in words.
> (iii) You have difficulty recalling important things you learned in school yesterday.
> (iv) You have difficulty solving mathematics questions or computing arithmetic answers.

---

[38] The plaintiff's counsel at oral argument acknowledged that on the facts of this case if the ALJ's analysis sufficed for purposes of the "functionally equals" criteria, then it would suffice for purposes of the criteria governing Listing 112.11. It may sometimes be the case that "overlap between the areas of mental functioning and the six domains" obscures "critical distinctions" which therefore require independent consideration of the domains where the listing criteria are not met. *Mena v. Comm'r of Soc. Sec.*, 2021 WL 1222150, at *13 (S.D.N.Y. 2021). Here, the relevant areas of mental functioning—(B3) concentration, persistence, and pacing and (B4) adaptation and self-management—are fully captured by the functional domains, such that independent consideration under both standards would be duplicative. *Compare Angelina P. o/b/o Angel M. v. Kijakazi*, 2021 WL 3856206, at *3–5 (D. Conn. 2021) (applying evidence for these mental functions to the functional equivalence domains and vice versa).

>  (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

*Id*. § 416.926a(g)(3).

The ALJ considered the results of cognitive testing performed by the plaintiff's special education teacher and concluded that his below-average performance primarily reflected lack of cooperation during the testing rather than cognitive deficiencies.[39] On a range of subjects with a standardized score range of 85-115, the plaintiff's performance varied from very low on his reading scores (56/57) to average on alphabet writing fluency (94), with most of his scores clustered in the low to below average range (60-80).[40] As the teacher noted, the plaintiff's total achievement score was very low (58), but that was due in significant part to "his behaviors during the testing," which led him to not even attempt a number of subtests.[41]

The ALJ also discussed the evaluation of a school psychologist who attempted to administer a nonverbal cognitive test to the plaintiff. As the ALJ noted, the psychologist found that the plaintiff "was willing to participate in a hands-on activity (with blocks)" and "exhibited age-appropriate visual-spatial reasoning skills and visual memory skills when he was attentive to-task."[42] Like the plaintiff's other evaluators, however, the psychologist recorded that "once questions were asked of him, he became noncompliant and began to move about climbing on

---

[39] Doc. #17-1 at 27 (Tr. 23).
[40] *Id*. at 218 (Tr. 214).
[41] *Id*. at 219 (Tr. 215). The teacher explained:
>  During the testing, [the plaintiff] refused to work at the table. He would stand and circle to the table or room during all testing sessions. He often went under the table or tried to climb on furniture. He needed frequent redirections to task. He would often yell "I'm not doing any work" and then refuse to attempt a task. He would also yell comments such as "I hate you", "school sucks", "I'm never going to listen", and "I'm not doing anything". He would attempt a subtest that involved pictures to look at. He refused to attempt 6 subtests during the testing. The [phonological processing test] was unable to be given because he refused to begin any subtest.

*Id*. at 217 (Tr. 213).
[42] *Id*. at 27, 221-22 (Tr. 23, 217-18).

furniture and going under the table, saying repeatedly 'bored' or 'so boring.'"[43] The psychologist concluded that the plaintiff had a full scall IQ of 83 (in the 27th percentile) and learning problems in "all academic areas," but that "the presence of emotional factors must be weighed heavily in evaluating a student's academic difficulties."[44]

An April 2018 assessment performed by the plaintiff's first-grade teacher yielded similar results. The plaintiff performed below-average on picture-based vocabulary testing and average in his expressive and receptive language skills, as well as average in his ability to receive information, retrieve necessary information and subsequently formulate an appropriate response.[45] But the teacher noted that the plaintiff was "very difficult to test" because he "sat under the table at times and ran around the table" and "would look at the pictures/answer questions while under the table or ran by me," although "[a]t times he was willing to stand by me and answer questions."[46]

Based on a review of the plaintiff's educational performance as evidenced by his school records and teacher reports, a special education team at his public school initially recommended that he attend 2.5 daily hours of in-school tutoring, then recommended that he be placed in a self-contained behavior disorder learning center for 3 hours daily to address his emotional disturbance.[47] In October 2018, after four weeks in the learning center, the plaintiff's second-grade teacher evaluated his ability to acquire and use information, marking him at the functional grade level of kindergarten to first grade.[48] She found that the plaintiff had obvious problems in

---

[43] *Id*. at 221-22 (Tr. 217-18).
[44] *Ibid*.
[45] *Id*. at 225-27 (Tr. 221-23).
[46] *Id*. at 225 (Tr. 221).
[47] *Id*. at 194-95, 198, 202 (Tr. 190-91, 194, 198).
[48] *Id*. at 243-44 (Tr. 239-40).

four of ten activities and a serious problem in another five.[49] She commented that the plaintiff "needs extra help with most assignments" and "usually cannot complete work independently."[50] The ALJ did not find this opinion persuasive based on the teacher's short observation period and incongruous report that the plaintiff had no issues interacting with others.[51]

Instead, the ALJ relied on a second teacher evaluation submitted in May 2019, at the end of the plaintiff's year in second grade.[52] In that assessment, the teacher found that the plaintiff was reading and writing at a first-grade level and doing math at a kindergarten level.[53] He still had an obvious problem in four activities related to acquiring and using information and a serious problem in four other activities, but he had improved at comprehending oral instructions, which was now only a slight problem.[54] The teacher noted that the plaintiff "receives extra help from teacher/para in completing most assignments" and that his "reading level has greatly improved," though "math/written expression [was] low."[55] While he remained "far below grade level in math and reading," he had "shown significant growth."[56] The teacher also noted that the plaintiff had an unusual degree of absenteeism during a time period when his family was moving or unable to find housing.[57]

---

[49] *Id*. at 244 (Tr. 240). The obvious problems were in comprehending oral instructions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions, while the serious problems were in understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and expressing ideas in written form. *Ibid*.
[50] *Ibid*.
[51] *Id*. at 26 (Tr. 22).
[52] *Id*. at 25-26 (Tr. 21-22). The plaintiff agrees that the latter evaluation should be given greater weight given that it reflects a full year of observation and assessment. *See* Doc. 18-1 at 16.
[53] Doc. #17-1 at 465 (Tr. 461).
[54] *Id*. at 466 (Tr. 462).
[55] *Ibid*.
[56] *Id*. at 472 (Tr. 468).
[57] *Id*. at 465 (Tr. 461).

The ALJ also relied upon the opinions of the non-examining clinical psychologists, Dr. Decarli and Dr. Augenbraun.[58] The ALJ found persuasive the conclusion of both medical consultants that the plaintiff's limitations were primarily behavioral, not cognitive, and noted that this conclusion comported with the observations made by the plaintiff's teacher and counselors.[59] The ALJ further observed that school records did not show the plaintiff had ever been held back a grade due to academic or behavioral issues.[60]

In light of the above, the Court concludes that substantial evidence supports the ALJ's determination that the plaintiff's below-average performance on standardized tests was at least partly attributable to behavioral issues that interfered with testing, and that his performance at school, while worrisome, had been negatively impacted by his family's recent move, was gradually improving, and reflected an overall less than marked impairment in acquiring and using information. *See Angelina P.*, 2021 WL 3856206, at *5 (substantial evidence supported finding of less than marked impairment in this domain where teacher observed plaintiff "engaged in an activity and fully capable of completing it but simply stopped working on it," plaintiff "was able to focus on assessment tasks during testing, although his concentration varied over the course of the day," and plaintiff "demonstrated engagement although at other times, demonstrated disruptive behavior"). The standard of review here is "not whether conflicting evidence might have resulted in a contrary decision, but whether substantial evidence supports the ALJ's decision." *Id*. at *5. Here, the ALJ provided well more than a mere scintilla of record support for his finding that the plaintiff was less than markedly limited in his ability to acquire and use information.

---

[58] *Id*. at 27 (Tr. 23).
[59] *Ibid*.
[60] *Id*. at 27 (Tr. 23).

*Attending and completing tasks*

The attending and completing tasks domain assesses how well a child focuses on tasks and maintains attention. 20 C.F.R. § 416.926a(h). The regulation states:

> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). The regulation gives several examples of limited function in this area:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
> (v) You require extra supervision to keep you engaged in an activity.

*Id*. § 416.926a(h)(3).

In considering whether the plaintiff had a marked limitation in attending and completing tasks, the ALJ relied on both evaluations by the plaintiff's special education teachers. In October 2018, the teacher observed that the plaintiff had serious problems on a daily basis with completing work accurately without careless mistakes and with working at a reasonable pace to finish on time.[61] He also had an obvious problem with refocusing to task when necessary and

---

[61] *Id*. at 245 (Tr. 241).

13

carrying out multi-step instructions.[62] The teacher noted that the plaintiff "participates in group activities while remaining focused" but "has difficulty staying on task during independent work"[63] In May 2019, the teacher reported that the plaintiff still had a serious problem completing work accurately without careless mistakes as well as working without distracting himself or others.[64] She observed serious problems in six other areas related to attending and completing tasks: paying attention when spoken to directly, focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, completing class/homework assignments, and working at a reasonable pace to finish on time.[65] By contrast, the plaintiff had no problem sustaining attention during play or sports activities, waiting to take turns, changing from one activity to another without being disruptive, or organizing his own things or school materials, and only a slight problem with carrying out single-step instructions.[66]

      The ALJ also relied on a form that one of the plaintiff's counselors completed based on weekly individual and family counseling sessions held in April 2018.[67] The counselor noted that the plaintiff was "always disruptive in sessions because he wants food or just not willing to talk," and that he displayed "physical and verbal aggression" by "throw[ing] tantrums and not following directions during session[s]."[68] But with respect to attending and completing tasks, the counselor reported that the plaintiff "is able to get tasks done when appropriate boundaries are put in place," and while the plaintiff exhibited "no pacing" and a "poor attention span," which

---

[62] *Ibid.*
[63] *Id.* at 246 (Tr. 242).
[64] *Id.* at 467 (Tr. 463).
[65] *Ibid.*
[66] *Ibid.*
[67] *Id.* at 28 (Tr. 24).
[68] *Id.* at 350, 352 (Tr. 346, 348).

"might impact ability to accomplish task; however if task broken down in small pieces [the plaintiff] can do the big task."[69] The ALJ noted that this was consistent with the reports from the plaintiff's second-grade teacher that he could carry out single-step instructions with little to no problem.[70]

Finally, the ALJ considered the opinions of the state agency medical consultants and the underlying reports from the plaintiff's counselors. Dr. Decarli noted that the plaintiff was "agitated, restless and distractible," while Dr. Augenbraun found him "hyper, inattentive and atypical," but both psychologists concluded that he had a less than marked limitation in attending and completing tasks.[71] While the plaintiff's counseling record reflects pronounced uncooperativeness and impulsivity, the counselor did observe that the plaintiff "reported that he has been doing his work in school" and "has been improving his homework completion as well."[72]

The ALJ did not discuss the evaluation of the school psychologist, who noted that the plaintiff had "Attention Problems" including "a short attention span, distractibility, and making careless mistakes."[73] This report, however, was entirely consistent with the observations of the plaintiff's teachers and counselors and the conclusions of the non-examining psychologists on which the ALJ relied. In particular, the psychologist noted that "the presence of emotional factors must be weighed heavily in evaluating a student's academic difficulties."[74]

Considering this record on a blank slate, I might have reached a different conclusion than the ALJ. After all, "the record is mixed – with some evidence showing, at times, serious

---

[69] *Id*. at 354 (Tr. 350).
[70] *Id*. at 28, 245, 467 (Tr. 24, 241, 463).
[71] *Id*. at 68, 79 (Tr. 64, 75).
[72] *Id*. at 413, 429 (Tr. 409, 425).
[73] *Id*. at 223 (Tr. 219).
[74] *Ibid.*

problems … and other evidence showing, at other times, only mild problems." *Angelina P.*, 2021 WL 3856206, at *4. Where a teacher finds serious or very serious problems in some sub-areas but slight or no problems in others, courts appropriately defer to an ALJ's interpretation of that evidence under the circumstances. *See, e.g., Angelique S. o/b/o A.M.A.C. v. Saul*, 2021 WL 2592903, at *5 (N.D.N.Y. 2021). Because it is up to the ALJ to weigh this conflicting evidence and the record demonstrates the ALJ here did so in a manner supported by substantial evidence, the Court will not re-weigh the evidence to reach its own determination.

## CONCLUSION

For the reasons set forth above, the Court concludes that substantial evidence supports the Commissioner's determination that the plaintiff is not disabled. The Commissioner's motion to affirm (Doc. #22) is GRANTED, and plaintiff's motion to reverse (Doc. #18) is DENIED. The Clerk of Court shall close this case.

Dated at New Haven this 1st day of February 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge